MECHANICS BANK, BROOKLYN, Appellant, *v.* THE CITY OF NEW YORK, Respondent.

*Contract — construction of contract for grading and filling in street — basis of computation of amount of material used for filling.*

1. A contract was entered into by plaintiff's assignor and the defendant for grading and improving a street. For a part of the distance at either end it ran through high ground which had to be excavated. In the center for a distance of eight hundred feet it crossed a marsh or swamp, across which a solid causeway was to be built sixty feet wide and twelve feet high above the surface of the marsh. Clause 14 of the contract provided, "the total amount of filling done will be determined by calculation, and will be only so much as is included

between the elevation of said surface of deposit, as recorded by the Engineer, and the grades hereinbefore set forth (where such filling comes up to such grades), and no allowance will be made the Contractor for any shrinkage, sinking or settlement." This action is brought to recover for filling which sank below the surface of the marsh, payment for which was refused by defendant. Upon examining and construing the contract and specifications as a whole, *held*, that this clause requires as a basis for its application a record by the engineer of the surface of deposit; that there is nothing in the contract or specifications, or the blue print maps accompanying the same or in this record to indicate conclusively, as matter of law, that certain lines drawn on the blue print map and referred to in behalf of the city, were intended or understood by the parties to be the record of the surface of deposit provided for by the specifications and on which the computation made by the engineer can rest.

2. If it should be properly determined on a new trial as a question of fact, or through additional evidence, as matter of law, that the parties did intend and understand them to be such, then the measurement made by the engineer which disallowed any compensation for earth sinking below the level of those lines would be valid. But if, on the other hand, it should be determined that these lines were not thus understood and intended and binding on the parties it would result that no surface of deposit was indicated and recorded by the engineer, and in that case the amount of embankment and filling furnished by the contractor must be measured in such manner as would be lawful and proper independent of the provisions of clause 14.

*Mechanics Bank* v. *City of New York*, 151 App. Div. 87, reversed.

(Argued March 9, 1914; decided June 9, 1914.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered June 13, 1912, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

The defendant advertised for bids to grade, regulate, curb, lay crosswalks and flag Washington avenue in the borough of Queens, between Academy street and Vernon avenue, a distance of about three thousand feet. Washington avenue was not actually opened as a street where

the work was to be done. A part of that distance at either end it ran through high ground which had to be excavated. In the center for a distance of eight hundred feet it crossed a marsh or swamp, across which a solid causeway was to be built sixty feet wide and twelve feet high above the surface of the marsh. The city engineer's estimates, stated to be approximate only, called for "80,000 cubic yards of earth filling (furnished)." Bids were received at unit prices and were tested by the estimates. The contract was awarded to John J. Young, the plaintiff's assignor. His bid thus tested amounted to $99,880, and the borough president certified that that was the estimated cost of the work.

The contract was prepared by the city on one of its regular forms. Attached to and forming a part of it were proposals and specifications on its regular printed forms and the contractor's bid also on a regular printed form furnished by it. Whereas the proposal called for "80,000 cubic yards of earth filling (furnished)," the bid was "for all embankment, in excess of excavation per cubic yard, the sum of ninety cents." In the contract a line was drawn through the printed words "earth filling furnished," and the words "all embankment, in excess of excavation" were interlined in writing. A profile map prepared by the city engineer was also attached to the contract. The lines on it were not designated by name in writing, but there was proof tending to show that they were intended to represent the datum line, the established grade of the new street and the existing surface of the ground and the marsh. The specifications, among other things, provided:

"Filling and embankments.

"10. Embankments shall be brought up to the designated grades, and the top, shaped off and compacted as defined for earth excavation, shall extend fully to the street line.

"11. Such excavated material as may be fit for the

purpose and as may be necessary, shall be used to fill in those parts of the street which are below the aforesaid grades, or which have become so by the removal of rock or improper material, in the manner hereafter provided, and the price paid per cubic yard of excavation is to include the cost of properly placing such excavated material as filling and in embankment, and the removal from the work of such material as is not so utilized.    \* \* \*

" 13. When the material excavated, fit for filling, is insufficient in quality to regulate the street, such additional material necessary shall be furnished, and placed by the contractor, and the quantity thereof to be paid for as ' filling to be furnished ' shall be the difference between the total amount of filling done and excavation made, with slopes in case as herein described and to the grades shown on the cross sections of the street.

" 14. The total amount of filling done will be determined by calculation, and will be only so much as is included *between the elevation of said surface of deposit as recorded by the Engineer, and the grades hereinbefore set forth (where such filling comes up to such grades), and no allowance will be made the Contractor for any shrinkage, sinking or settlement.*

" 15. All filling shall be good, wholesome earth, free from all frozen materials, garbage, vegetables, spongy or unsuitable matter."

The contract required all materials to be " satisfactory to the engineer," and he was given power to reject any that was " unsuitable or not in conformity with the specifications." The published advertisement for bids was not put in evidence, but it was stipulated that the " contract was duly advertised for ten days." Aside from the construction of the causeway, the plan required only a trifling amount of filling, much less than the excavation. There is no dispute that the contractor used 85,494½ cubic yards of material in excess of excavation.

Of that amount, 40,577 cubic yards remained above and 44,917½ cubic yards sank below the surface of the marsh. After the contract was let there was a change of engineers.   The new engineer in his final certificate allowed for only 40,577 cubic yards of filling, and refused to certify the balance, basing such refusal on his construction of the contract.   He testified that he made his estimate by taking as the "surface of deposit" the elevation of the surface of the swamp, which he said was the same as that indicated by the irregular lines on the profile map, and by computing the amount of material between that elevation and the final grade as established.   The contract contained the usual provision as to the conclusiveness of the engineer's estimate and the following:

"Any doubt as to the meaning of the specifications, or any obscurity as to the wording of them, will be explained by the Engineer, and all directions and explanations requisite or necessary to complete, explain or make definite any of the provisions of the specifications and give them due effect, will be given by the Engineer."

An expert engineer testified that in engineering science the term "surface of deposit" meant the level forming the base upon which an embankment rests or is made, and that the usual and customary method of determining that was by borings and soundings to determine the line of solid foundation.   He also testified that the terms "embankment" and "filling" were used in their ordinary sense.   He was asked whether it was possible to determine the elevation of the surface of deposit from the profile map.   The question was excluded and an exception taken to the ruling.   This action was brought to recover for the material which sank below the surface of the marsh, and the question is whether the fourteenth specification precludes a recovery.

There were 40,577 cubic yards of filling between the surface of the marsh and the established grade of the proposed street in excess of the material excavated.   The

contractor actually deposited in round numbers 85,000 cubic yards of material in excess of that excavated; the city wishes to pay for but 40,577 cubic yards. The city estimated that, according to the price bid, the particular part of the work in question would cost $72,000.

*James M. Gray* for appellant. The expressed intent of the parties was that the contractor should be paid for " all " the material used, and to that end they classified the work as " embankment," not " filling," and provided that the restricted method of measurement for " filling " set forth in specification 14 should not apply to the work. (*Agawam Bank* v. *Strever*, 18 N. Y. 502; *Goix* v. *Knox*, 1 Johns. Cas. 337; *Bradley* v. *Buffalo, etc., Ry. Co.*, 34 N. Y. 427; *Matter of Ives*, 25 Abb. [N. C.] 63; *State Board* v. *Central Ry.*, 48 N. J. L. 146; *Brown* v. *Hitchcock*, 36 Ohio St. 681; *Olsen* v. *State Bank*, 57 Minn. 552; *Greenfield* v. *Gilman*, 140 N. Y. 168; *Kennedy* v. *Porter*, 109 N. Y. 526; *Pothoff* v. *Safety Co.*, 143 App. Div. 161.) The engineer based his refusal to certify the amount of material which went below the surface solely on his interpretation of the contract. If that interpretation was erroneous the production of his certificate is excused. (*St. George Contracting Co.* v. *City*, 205 N. Y. 121; *MacKnight Flintic Stone Co.* v. *Mayor, etc.*, 160 N. Y. 72; *Bowery National Bank* v. *Mayor, etc.*, 63 N. Y. 336; *Burke* v. *Mayor*, 7 App. Div. 128; *Thiel* v. *Week Co.*, 137 Wis. 272.)

*Frank L. Polk, Corporation Counsel (Terence Farley* of counsel), for respondent. In the absence of fraud, bad faith or palpable mistake appearing upon the face thereof the final certificate of the engineer, according to the express terms of the contract, is binding and conclusive upon the contractor, and this action is not maintainable unless and until that certificate is successfully assailed. (*Neidlinger* v. *Onward Construction Co.*, 107 App.

Div. 398; 188 N. Y. 572; *Condict* v. *Onward Construction Co.,* 210 N. Y. 88; *Kihlberg* v. *United States,* 97 U. S. 398; *Martinsburg, etc., R. Co.* v. *Marsh,* 114 U. S. 549; *Chicago, etc., R. Co.* v. *Price,* 138 U. S. 185; *Ripley* v. *United States,* 223 U. S. 695; *Wood* v. *Chicago, etc., R. Co.,* 39 Fed. Rep. 52; *Cook* v. *Foley,* 152 Fed. Rep. 41; *Woarms* v. *United States,* 39 Ct. Cl. Rep. 10; *United States* v. *Ellis,* 2 Ariz. 253; 14 Pac. Rep. 300; *Carlile* v. *Corrigan,* 83 Ark. 136.) If there were any doubt as to the meaning of the specifications, it was the duty of the contractor, under clause F of the contract, to have the engineer explain them. (*Kelley* v. *Public Schools,* 110 Mich. 529; *Hart* v. *City of New York,* 201 N. Y. 45; *Barry* v. *Mayor, etc., of N. Y.,* 38 App. Div. 632.) The amount of the engineer's preliminary estimate does not shed any light on the subject. The statements of quantities as a preliminary estimate are approximate only; they are not guaranteed, and no liability can be predicated on the fact that they are erroneous. (*Lentilhon* v. *City of New York,* 102 App. Div. 548; 185 N. Y. 549; *Bluzo* v. *Gill,* 69 Hun, 69; *Riley* v. *City of Brooklyn,* 46 N. Y. 444; *Sullivan* v. *Village of Sing Sing,* 122 N. Y. 389; *Gisel* v. *City of Buffalo,* 15 N. Y. S. R. 561; *Haydnville Min., etc., Co.* v. *Art Institute,* 39 Fed. Rep 484; *Cannen* v. *Wildman,* 28 Conn. 472; *St. Paul & N. P. Ry. Co.* v. *Bradbury,* 42 Minn. 222; *Coker* v. *Young,* 2 F. & F. 98; *Kemp* v. *Rose,* 4 Jur. [N. S.] 319; *Sharpe* v. *San Paulo R. Co.,* L. R. [8 Ch.] 597; *Scrivner* v. *Pask,* 18 C. B. [N. S.] 785; 1 Hudson on Building Contracts, 113.)

HISCOCK, J.   I think that the judgment appealed from must be reversed.

I do not assent to appellant's contention that there is a difference in the meaning of the terms "embankment in excess of excavation" and "earth filling furnished," used in the contract and various instruments connected there-

with and forming a part thereof. Actually the two phrases, as a basis of payment to the contractor, mean the same thing. Embankment simply defined that which was produced by filling, and in computing the amount of material furnished and placed by the contractor it would make no difference whether it was described as embankment or as filling. This similarity in meaning is emphasized by the provision in connection with each phrase, that for the purposes of payment to the contractor it only covered that which was produced or furnished in excess of the material derived from excavation. Still further, the series of clauses 10–15 in the specifications, which have been quoted, both by their title, "Filling and Embankment," and by their provisions, make it apparent that embankment is to be treated and computed the same as filling.

Neither do I give the importance, which is asserted in behalf of the appellant, to the fact that in the contract proper the printed blank which originally read "earth filling furnished" was changed to "all embankment in excess of excavation," wherefrom it seeks to give especial emphasis to the word "all" as justifying a different measurement than was applied by the engineer of the city to this item of work done by the contractor.

As I have indicated, in my opinion the two terms "embankment in excess of excavation" and "earth filling furnished" actually mean the same thing. They were used interchangeably in the various instruments which made up the contract, and I think that the explanation of the change in the printed blank already referred to may be found outside of the reasons given by appellant. In the published proposal for this work the term used was "earth filling furnished," but when the contractor made his bid he evidently used a printed blank, in which the term employed was "all embankment in excess of excavation." Under these circumstances it was quite natural that the agreement which followed the bid should

employ the precise language which had been used in the latter, and I think this is the explanation of the change in the blank. If we do not assume that these terms are interchangeable, then we have it that a bid and agreement have been made and executed for an item of work which was not included in the published proposal for bids, and which proposal it may be assumed was followed in verbiage by the published advertisement for bids.

If the foregoing view is correct, then the word "all" in the clause referred to in the agreement ceases to possess the significance urged for it. It is argued that it is to be construed as indicating an intention to include as embankment everything which generally would answer to that description, but it seems to me that the clause is to be construed in connection with the other provisions of the contract, and doing this the clause provides for payment for everything in the way of embankment when measured as such in accordance with the other provisions of the contract. If there is any provision in the contract prescribing a particular method of computing embankment and filling which excludes allowance for material sinking below the original surface of the ground, the effect of this provision would not be nullified by the use of the word "all" in the phrase quoted. Thus far, therefore, I agree with the reasoning which has led to the judgment in behalf of the city, but at this point I encounter difficulties in affirming the judgment which I have not been able to avoid.

Clause 14 of the specifications, which has been quoted and under which the computation has been made of which appellant complains, provides that "The total amount of filling done will be determined by calculation, and will be only so much as is included between the elevation of said surface of deposit, *as recorded by the engineer*, and the grades hereinbefore set forth." This clause, therefore, requires, as a basis for its application, a record by the engineer of the surface of deposit. As already

indicated, I think this clause was intended to provide for the measurement of embankment in this case, and I have no doubt that the engineer might have recorded as the surface of deposit the original surface of the ground, and that if the contract had been made on that basis the contractor would be bound by it and there would be no right of recovery for material which sank below such original surface of the ground even though we should believe that equitably and properly the surface of deposit should have been made the firm foundation to which the material finally sank. The computation for filling accorded to the contractor has been made in behalf of the city on the basis that such surface of deposit was fixed and recorded by the engineer, and for the purpose of sustaining this interpretation of the contract our attention has been called to three lines drawn on the blue print map which concededly is to be considered in connection with the contract. But the trouble with this theory is that there is nothing on the map or elsewhere in the instruments considered and executed by the parties to indicate, conclusively at least, that these lines were the record of the surface of deposit as provided by the clause which has been quoted. One witness called by the appellant testified, in substance, that from his experience and knowledge as an engineer he would know or assume that these lines did indicate such surface of deposit, but the appellant proved and sought to prove by another witness that they would not be thus understood. It seems to be conceded that these lines did indicate the original surface of the ground, and perhaps it might be assumed in the absence of evidence to the contrary that unless some other one was indicated, the original surface of the ground would be such surface of deposit. But that presumption cannot prevail as a matter of law in this case, because evidence was admitted without objection that where filling is to be done on marshy land as this was, the surface of deposit accepted and considered by engineers

is the solid foundation finally found by the material as it sinks through the marshy land.

In addition to this, it is significant that the proposal and estimate for this work did specify as the amount of filling to be done a quantity which corresponds with a surface of deposit, not at the original surface of the ground, but at the submerged level where the deposited filling finally found a foundation. Under these circumstances I do not think that we can hold as matter of law that the lines drawn on the blue print map and referred to in behalf of the city were intended or understood by the parties to be that record of the surface of deposit provided for by the specifications and on which the computation made by the engineer can rest. If it should be properly determined as a matter of fact or, through additional evidence as matter of law, that the parties did intend and understand them to be such, then in my opinion the measurement made by the engineer which disallowed any compensation for earth sinking below the level of those lines would be valid. But if, on the other hand, it should be determined that these lines were not thus understood and intended and binding on the parties it would result that no surface of deposit was indicated and recorded by the engineer, and in that case I see no reason why the amount of embankment and filling furnished by the contractor must not be measured in such manner as would be lawful and proper independent of the provisions of said clause 14.

For these reasons I advise the reversal of the judgment and that a new trial be granted, costs to abide event.

CHASE, COLLIN, CUDDEBACK and CARDOZO, JJ., concur; WILLARD BARTLETT, Ch. J., and MILLER, J., concur in result.

Judgment reversed, etc.